JOHN M. NEWMAN
RANDY J. TANNER
Assistant U.S. Attorneys
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
105 E. Pine, 2nd Floor
Missoula, MT 59802
Phone: (406) 829-3336 – John
          (406) 329-4268 - Randy
FAX: (406) 542-1476
Email: john.newman@usdoj.gov
          randy.tanner@usdoj.gov

ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ESTATE OF KENDA K. GOULD and CHARLES PATRICK GOULD,<br><br>                    Plaintiffs,<br>       vs.<br><br>UNITED STATES OF AMERICA, U.S. FOREST SERVICE,<br><br>                    Defendant. | CV 20-177-M-DWM<br><br>DECLARATION OF ERIC TOMASIK |

I, Eric Tomasik, declare the following:

1. I am aware of the above-referenced litigation, *Gould v. United States*. If called to testify at trial in this case, I would testify consistently with the statements made in this declaration.

2. I am the Assistant Director of Resource Planning and Monitoring for the Pacific Northwest Region of the U.S. Forest Service (Forest Service). My current duty station is Portland, Oregon.

3. Before my current job, I was the District Ranger for the Ninemile Ranger District (the District) in the Lolo National Forest. I held the District Ranger position for 2-1/2 years from February 2019 to October 2021. I was the District Ranger at the time of the accident that is the focus of this litigation.

4. The District includes the Fish Creek area, including West Fork Fish Creek Road, Road No. 7750.

5. As a District Ranger, my primary responsibility included administration and oversight of the District. The duties delegated to me by the Regional Forester for the Northern Region and the Forest Supervisor for the Lolo National Forest included administration of the National Forest System (NFS) lands in the District and the activities occurring on them. My duties as District Ranger included (a) overseeing inventory, planning, and administration of national forest

resources such as timber, soil, land, water, wildlife and fish habitat, minerals, forage, wilderness and visual areas, and outdoor recreation; (b) overseeing planning, budgeting, and information management for workforce and organizational needs and unit priorities; (c) supervising subordinate positions; (d) developing and monitoring performance standards, providing advice and counsel to staff, reviewing and resolving minor complaints, and providing training deemed appropriate by the Forest Service; (e) staying informed of current social, political, and economic issues and concerns in the District; (f) planning work to be accomplished, setting and adjusting short-term priorities, and preparing schedules for completion of work; and (g) addressing workforce capacity needs.

6. All outdoor activities on NFS lands, including use of NFS roads and NFS trails, have inherent risks due to the natural setting in which they occur. It is not possible for District Rangers to know of all the hazards on NFS lands in their district, which contain large, remote, heavily forested landscapes with varying types and amounts of use, wildlife such as grizzly bear and mountain lion, and other natural risk factors. In consultation and with the assistance of staff, District Rangers strive to create a work environment that encourages mitigation of known hazards to the extent practicable and appropriate given limited resources, competing priorities, and multiple-use considerations.

7. A danger tree is a standing tree that presents a hazard to people due to conditions such as deterioration of or damage to the root system, trunk, stem, or limbs or the direction or lean of the tree.

8. A high-priority danger tree hazard is a road or road segments where danger trees are determined to be highly likely to fail and where those failures would be highly likely to cause injuries.

9. In the time leading up to the accident involving the Goulds, I was not aware of any particular danger tree hazards, including high-priority danger tree hazards, on NFS Road 7750. As of May 2019, there were no known hazards on the road.

10. There are many employees and contractors who travel on NFS roads in the District. When a high-priority danger tree hazard is identified along an NFS road in the District, District staff will correct or mitigate it by removing the tree as soon as practicable. The District Ranger generally receives notification of or a request to remove a high-priority danger tree hazard that is identified along an NFS road.

11. NFS Road 7750 accesses NFS lands, private residences and inholdings, a university station, and Forest Service developed recreation sites like the Clearwater Crossing Campground and nearby trailhead. As a result, the road is

frequently used by Forest Service employees and the public. To my knowledge, Forest Service employees did not observe, nor did the public report, any type of danger tree hazard, including a high-priority danger tree hazard, along NFS Road 7750 around the time of the Goulds' accident.

12. I am aware of provisions in the Forest Service Handbook (FSH) regarding danger trees along NFS roads, found at FSH 7709.59, Chapter 40, section 41.7, paragraph 2. This paragraph provides discretionary guidance on prioritizing and mitigating known danger tree hazards along NFS roads. There is no requirement in this paragraph for the Forest Service to perform danger tree hazard assessments along every NFS road. This paragraph limits investigative and mitigative action for known high-priority danger tree hazards to what is deemed appropriate and practicable by the Forest Service. The paragraph provides for monitoring known low-to-medium priority danger tree hazards to the extent deemed practicable and feasible by the Forest Service.

13. There are hundreds of miles of NFS roads and approximately one-half million acres in the District. During my tenure as the District Ranger for the District, we lacked the resources to perform danger tree hazard assessments along every NFS road in the District.

14. The District had 16 year-round staff. An additional 30 to 40 seasonal staff worked for the District each year. These employees were responsible for managing a large array of programs and resources during the year, including fighting wildfires, prescribed burning, and fuels removal; staffing and maintaining the historic Ninemile Remount Depot and Ranger Station; managing and maintaining numerous campgrounds, trailheads, NFS trails, and miles of NFS roads; managing timber sales; performing silviculture treatments; managing noxious weeds; administering special use permits, performing habitat improvement projects, completing planning for future projects, administering a minerals program, managing the Northern Region Packtrain, managing the winter stock boarding program, and many other activities.

15. Even if District personnel had ignored these other programs and responsibilities and had focused only on conducting danger tree hazard assessments along NFS roads, District personnel still would not have been able to conduct a danger tree hazard assessment along every NFS road in the District each year, nor is it necessary to do so absent an identified danger tree hazard.

16. Consistent with FSH 7709.59, Chapter 40, section 41.7, paragraph 2, if District personnel became aware of a high-priority danger tree hazard along an NFS road, District personnel would as soon as practicable take steps to mitigate the

hazard. Mitigation of the hazard involved sending qualified personnel to the location of the high-priority danger tree hazard and safely mitigating the hazard by removing all or part of the trees, consistent with FSH 7709.59, Chapter 40, section 41.7, paragraph 2.

17. During my tenure as District Ranger, District personnel did not become aware of a high-priority danger tree hazard along an NFS road that could not be mitigated. If District personnel had become aware of such a hazard, District personnel would have closed the affected road segment, consistent with FSH 7709.59, Chapter 40, section 41.7, paragraph 2.

18. Based on the expertise of staff with the requisite training, expertise, and experience in identifying danger tree hazards, including high-priority danger tree hazards, this tree would not have been identified as a high-priority danger tree hazard at the time of the accident, and the segment of NFS Road 7750 where the accident occurred would not have been identified as a danger tree hazard, much less a high-priority danger tree hazard. The vegetation along the road looked very similar to the vegetation along many other NFS roads as of May 2019.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 7th day of April 2022.

_____
Eric Tomasik